IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIRA LYNN DODSON,                    §
                                     §
            Petitioner,              §
                                     §
V.                                   §
                                     §        No. 3:12-cv-918-L-BN
WILLIAM STEPHENS, Director           §
Texas Department of Criminal Justice, §
Correctional Institutions Division,  §
                                     §
            Respondent.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Kira Lynn Dodson, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

**Background**

Petitioner was charged with capital murder by a Dallas County grand jury. She was found guilty at trial and sentenced to an automatic term of life imprisonment. Petitioner's conviction was affirmed on direct appeal. *See Dodson v. State*, No. 05-07-00649-CR, 2008 WL 625115 (Tex. App. – Dallas, Mar. 10, 2008, pet. ref'd). Her application for state post-conviction relief was denied without written order on the findings of the trial court. *See Ex parte Dodson*, WR-73,466-01 (Tex. Crim. App. Jan. 11, 2012). Petitioner then filed this action in federal district court.

The underlying facts and procedural history of this case are largely uncontested

and well known to the parties. On March 24, 2005 at 2:30 a.m., Petitioner's daughter, K.V., was transported to the hospital after she was found lying "halfway off" her bed, appearing a "bluish-purple" color, and apparently had stopped breathing for a short time. After spending several hours at the hospital and following a number of examinations including a chest x-ray and tests for respiratory syncitial virus ("RSV") and influenza, K.V. was given cough medicine and an antibiotic and discharged to attend a planned visit to her pediatrician. She was not brought to see the pediatrician but seemed to get better.

Two weeks later, K.V. was found dead in her bedroom. There were no external injuries to her body, but an internal exam revealed a few pinpoint hemorrhages in the thymus gland and swelling of the brain. There was no evidence of infection in the body, asthma, or the presence of medication.

On April 21, 2005, Petitioner and her boyfriend, Matthew Erwin, were interviewed by Dallas police officers. Petitioner gave two written statements. In her second affidavit, Petitioner admitted placing a pillow over K.V.'s face while K.V. slept and suffocating her to death.

Based upon this statement and autopsy findings consistent with a suffocation death, the medical examiner determined that the cause of death was suffocation and the manner of death was homicide. Had there not been a confession, the cause and manner of death would have been "undetermined."

At trial, the state introduced testimony from a number of witnesses, including the adoptive mother of Petitioner's son, a friend of Petitioner, Erwin, and two police

officers. These witnesses recounted conversations with Petitioner that suggested her dissatisfaction with being a parent and concern that she would be blamed for K.V.'s death. Petitioner testified in her own defense, stating that she had not killed her daughter and that her written confession was untrue and the result of overbearing police techniques employed by Sergeant Fred Rich. A defense expert opined on the phenomena of false confessions and the interrogation techniques that may lead to unreliable statements. After three days of deliberation, the jury found Petitioner guilty of capital murder.

In six grounds for relief, Petitioner contends that she received ineffective assistance of trial counsel when her lawyer, Paul Johnson, (1) failed to file a motion in limine to prohibit testimony regarding polygraph examinations or timely object to testimony to that effect; (2) did not file a motion in limine regarding or timely object to the prosecutor's allegedly improper framing of questions at trial; (3) elicited a witness's opinion that Petitioner committed murder; (4) failed to file a motion in limine to prohibit testimony that Petitioner wanted to start a family with an inmate nor secure a ruling on his objection to such testimony; (5) neglected to file a motion in limine or timely object to testimony regarding Petitioner's work as a topless dancer; and (6) failed to present expert medical testimony that the emergency room doctor who examined K.V. two weeks before her death failed to order tests to rule out certain life-threatening medical conditions.

### Legal Standards

Where, as here, a state court has already rejected a claim on the merits, a

federal court may grant habeas relief on that claim only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 (internal quotation marks omitted). The Supreme

Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996], § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no farther." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *accord Burt v. Titlow*, ___ S. Ct. ___, 2013 WL 5904117, at *4 (U.S. Nov. 5, 2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

Further, the Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

Section 2254(d)(2)'s and Section 2245(e)(1)'s intersecting standards allow the

Court to grant habeas relief based on a fact issue only if the petitioner demonstrates both an incorrect factual determination by clear and convincing evidence and that it compromised the objective reasonableness of the court's corresponding decision. *See Valdez v. Cockrell*, 274 F.3d 941, 951 n.17 (5th Cir. 2001); *accord Sells v. Stephens*, No. 12-70028*, ___ F. App'x ___, 2013 WL 3784348, at *11 (5th Cir. July 22, 2013).

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

First, the petitioner must demonstrate that the performance of her attorney fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that she was prejudiced by her attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered

sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *cert. denied,* 133 S. Ct. 1584 (2013).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S. Ct. at 791. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler,* 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington,* 131 S. Ct. at 791. "Instead, *Strickland* asks

whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 792 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at 792.

Where, as here, the state court adjudicated an ineffective-assistance claim on the merits, this Court must review Petitioner's claim under the doubly deferential standards of both *Strickland* and Section 2254(d). *See id.* at 785, 788. In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Id.* "The *Strickland* standard is a general one, so the range of reasonable applications is substantial," and, where, as here, Section 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. Thus, if the most that a petitioner can demonstrate is that fairminded jurists could disagree on the correctness of the state court's decision as to either deficient performance or prejudice, federal habeas relief is precluded. *See Clark*, 673 F.3d at 422, 424.

"[A]n aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998). However, where the individual allegations of error are not of constitutional

stature or are not errors, there is "nothing to cumulate." *Turner v. Quarterman,* 481

F.3d 292, 301 (5th Cir. 2007).

## Analysis

Polygraph Examination Evidence

Petitioner claims that she received ineffective assistance of counsel because her

trial counsel failed to file a motion in limine to prohibit testimony that Sergeant Rich

asked Petitioner and Erwin to take polygraph examinations and because her trial

counsel failed to object to Erwin's testimony that he volunteered and agreed to do so.

On direct examination of Sergeant Rich, the following colloquy occurred:

> Q: So you have this conversation with her. At some point in time does the
> defendant say something which causes you to change your opinion about
> how the course of the conversation is going?
>
> A: I asked her – one of the questions I asked, I had asked Michael Erwin,
> too, is because I wanted to get a response from her. I asked her if she
> would take a polygraph concerning if the child had been smothered.

Trial Tr. Vol. IV at 126. Defense counsel then made a timely objection, which was

sustained by the trial court, and the judge instructed the jury to disregard the

comment. *See id.* A motion for mistrial was denied. *See id.* at 127.

During Johnson's cross-examination of Erwin, the issue of a polygraph test was

again raised by a witness:

> Q: But the police are telling you that there's evidence that somebody did
> something wrong, isn't there?
>
> A: Yeah. I even volunteered to take a lie detector test right then and
> there. We can take one now.

\* \* \*

Q: After he told you that he thought the baby had been suffocated, he never asked you anything or said anything to you that might have made you think that he might have thought that you could possibly be involved?

A: He asked me if I was willing to take a lie detector test or anything, if it was possible, and I told him, yeah, we could take it right then.

*See id.*, Vol. VI at 10 & 15-16. No objection was made by defense counsel, and no further information about a polygraph test was elicited or volunteered.

The state habeas court found that the testimony regarding polygraph tests was non-responsive and improper under Texas law and that a motion in limine would have been granted had it been filed. *See* Clerk's R. at 60. But the court found that a motion in limine alone would not have been enough to preserve error and was unnecessary under Texas law. *See id.* The court found that:

[t]rial counsel's decision not to file a motion in limine was a reasonable trial strategy based upon trial counsel's belief that the State would not attempt to adduce testimony concerning polygraph examinations since it is well settled that such testimony is inherently inadmissible. Trial counsel's decision not to object to Erwin's non-responsive mention of a polygraph examination was a reasonable trial strategy based upon trial counsel's belief that an objection would draw the jury's attention to that testimony unnecessarily. Even if trial counsel's decision not to object was unreasonable, the court finds that, in all reasonable probability, the testimony had no effect on the jury's verdict.

*Id.* at 61.

Petitioner has not shown the state trial court's finding was based upon an unreasonable determination of the facts or involved an unreasonable application of clearly established federal law. In Texas, evidence of polygraph examinations is not admissible for any purpose, whether offered by the State or defendant. *See, e.g.*,

*Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985). Although a motion in limine would be an appropriate method of addressing the admissibility of polygraph evidence, *see Wade v. State*, 814 S.W.2d 763, 764-65 (Tex. App. – Waco 1991, no pet.), a pretrial motion is unnecessary where, as here, the evidence is inadmissible in all cases, *see Stout v. Director, TDCJ-CID*, No. 6:07-cv-23, 2007 WL 1005979, at *6 (E.D. Tex. Mar. 30 2007). A motion in limine does not exclude evidence in and of itself. *See Kirk v. State*, No. 07-97-0389-CR, 1999 WL 158469, at *7 (Tex. App. – Amarillo, Mar. 12, 1999, no pet.); *see also Pina v. Thaler*, No. 2:09-cv-284, 2013 WL 607147, at *8 (N.D. Tex. Jan. 30, 2013), *rec. adopted*, 2013 WL 622190 (N.D. Tex. Feb 19, 2013). The exclusion of evidence that is the subject of a motion in limine may be reconsidered throughout the trial; counsel would have been required to object (outside the presence of the jury) to any such reference at trial. *See Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998); *Pina*, 2013 WL 607147, at *8. Under the circumstances, Petitioner has failed to establish that no fairminded jurist could agree with the state court's conclusion that Johnson was not deficient for failing to file a motion in limine. *See Harrington*, 131 S. Ct. at 786.

Petitioner has also failed to establish that no fairminded jurist could agree with the state court's conclusion that Johnson was not deficient under the *Strickland* standard for failing to object to Erwin's non-responsive answers regarding a polygraph test. *Id.* The state court reasonably concluded that trial counsel engaged in a reasonable trial strategy based on his belief that an objection to this testimony – which generally suggested that the witness was willing to take a polygraph test to establish

that he did not murder K.V. – would unnecessarily draw attention to the testimony.

Even if Petitioner had shown that the state court's ruling as to Johnson's alleged deficiency was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement, Petitioner has not made the necessary showing regarding prejudice to prevail on this claim. Initially, defense counsel made a timely objection to Rich's testimony that he asked Petitioner and Erwin to take polygraph examinations. *See* Trial Tr. Vol. IV at 126. The court sustained the objection and instructed the jury to disregard the statement. *See id.* The jury is presumed to have followed the trial court's commands. *See Galvan v. Cockrell*, 293 F.3d 760, 765-66 (5th Cir. 2002).

The only testimony before the jury, then, about a polygraph examination was Erwin's statement that he was asked to submit to a polygraph test and agreed to do so. *See* Trial Tr. Vol. VI at 10 & 15-16. This information did not refer to Petitioner at all. Any effect the filing of a motion in limine or a timely objection would have had on the proceedings is entirely speculative. *See Pina*, 2013 WL 607147, at *8. It is mere speculation to claim that – but for the lack of a motion in limine – Rich and Erwin would have not raised the issue of a polygraph test, or, if they had, the trial court would have granted a mistrial for violation of the limine order. Such speculation does not satisfy the Petitioner's burden to establish that no fairminded jurist could agree with the state court's conclusion regarding prejudice. *See Bradford v. Whitley,* 953 F.2d 1008, 1012 (5th Cir. 1992).

That is, applying the stringent test of *Harrington*, even if the state court's

-13-

decision as to prejudice was incorrect, fairminded jurists could at the very least disagree on the correctness of the state court's decision, and federal habeas relief is therefore precluded. *See Clark*, 673 F.3d at 424. Further, Petitioner has not shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding under the Section 2254's exacting standard. And, although Petitioner invokes Section 2254(d)'s "contrary" standard, she has not even argued that the state court decision as to prejudice on this claim relied on legal rules that directly conflict with the United States Supreme Court's prior holdings or reached a different conclusion than the United States Supreme Court on materially indistinguishable facts. *See Busby*, 359 F.3d at 713.

The Prosecutor's Use of the Word "Murder"

Petitioner next alleges that Johnson was ineffective for failing to file a motion in limine regarding and object to the prosecutor's repeated framing of questions to suggest that K.V. was the victim of murder. On at least seven occasions during the trial, the prosecutor asked a question that presupposed that the manner of death was murder. Petitioner urges that this conduct constitutes improper opinion testimony by the prosecutor because it communicates her "personal opinion" that Petitioner suffocated K.V.

The state habeas court found that the questions were improperly framed and "the better practice may have been to object to the form of the question." *See* Clerk R. at 64. But it found that the questions, individually and cumulatively, did not prejudice Petitioner's case because the jury was well aware that the prosecutor believed that

Petitioner committed murder and the questions almost certainly had no influence on the jury's verdict. *See id.*

Petitioner has not established that the state court's disposition of this issue was in any way unreasonable. The Texas cases that Petitioner cites do not stand for the proposition that the use of the word "murder" or similar framing by a prosecutor is inherently objectionable. In *Boyde v. State*, 513 S.W.2d 588 (Tex. Crim. App. 1974), the Texas Court of Criminal Appeals found prosecutorial misconduct where the prosecutor argued to the jury that he was aware of certain evidence of the defendant's guilt which was inadmissible at trial. *See id.* at 590-91. The prosecutor further argued that "you will never find me defending criminals in this or any other County. You will never find me accepting stolen money, stolen merchandise as a fee. You will never find me standing up here and trying to get a murder—...." *Id.* at 591. The prosecutor also repeatedly referred to an inadmissible oral confession in cross examination and argument. *See id.* Accordingly, the *Boyde* court found that reversal was mandated because of the prosecutor's "course of repeatedly attempting to place matters before the jury which were clearly impermissible [which] could have served no purpose other than to inflame and prejudice the minds of the jurors." *Id.* at 593. That is simply not the case here.

*Craig v. State*, 847 S.W.2d 434, 435-36 (Tex. App. – El Paso 1993, no pet.), is similarly inapposite. There the defense counsel committed 16 instances of deficient performance during the trial and sentencing phase of a murder trial, none of which could be seen as a reasonable tactical decision. One of these errors was that he asked

a prosecution witness whether his client "was bragging about having killed [the victim], thereby accepting a State-oriented interpretation of the circumstantial evidence and implications of [the witness's] testimony[.]" *Id.* at 435. Again, *Craig* in no way suggests that the use of the word "murder" or "killing" alone would be deficient or prejudicial.

Here, the prosecutor's questions did not suggest that she was aware of evidence that was not before the jury. At worst, they indicated that the prosecutor believed that K.V. died as the result of murder – information that was reasonably evident to the jury once the indictment was read in open court. Simply indicating the manner of death through questions is not the same as presenting a personal opinion as to the guilt of a defendant.

Petitioner has cited no case law, and the undersigned is aware of none, that holds that the use of words like "murder" in a prosecutor's questions is *per se* prejudicial or that defense counsel is deficient for failing to object to such conduct. The term "murder" is not inherently prejudicial or manifestly improper. *Cf. Taylor v. Director, TDCJ-CID*, No. 4:09-cv-43, 2011 WL 2118650, at *5 (E.D. Tex. May 27, 2011) (citing cases), *rec. adopted*, 2012 WL 1080484 (E.D. Tex. Mar. 30, 2012) (finding no ineffective assistance where defense attorney failed to file a motion in limine to prevent the use of the word "victim" in a sexual assault case).

In any event, Petitioner has failed to make the necessary showing under the doubly deferential standards of *Strickland* and Section 2254(d). Again, although Petitioner invokes Section 2254(d)'s "contrary" standard, she has not even argued that

the state court decision as to prejudice on this claim relied on legal rules that directly conflict with the United States Supreme Court's prior holdings or reached a different conclusion than the United States Supreme Court on materially indistinguishable facts. *See Busby*, 359 F.3d at 713. And fairminded jurists could agree with the correctness of the state court's decision that the questions at issue did not individually or cumulatively prejudice Petitioner's case. Neither has Petitioner has shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding under the Section 2254's exacting standard. Accordingly, federal habeas relief is precluded on this claim.

Introduction of a Cartoon Sent to an Inmate

Petitioner alleges that her attorney was ineffective for failing to file a motion in limine to prohibit testimony that she wanted to start a family with an inmate and did not obtain a ruling on his trial objection. She claims as inadmissible character evidence the prosecutor's introduction of a Hallmark card that she sent to her boyfriend. The card depicted a young couple holding hands and envisioning a family and contained the caption "love is dreaming of starting a family." The prosecutor argued in closing that children are disposable to Petitioner and that the jury must prevent her from having more children, suggesting that the greeting card indicated Petitioner's interest in having children with her boyfriend. Petitioner contends that the testimony and greeting card itself was inadmissible, "irrelevant and reflected poorly on petitioner's character." Dkt. No. 2 at 29.

The state habeas court found that Johnson was deficient in failing to object to

-17-

the admissibility of the cartoon, since the only relevance was casting Petitioner's character in a bad light. *See* Clerk's R. at 68-69. But it found that the evidence most likely would not have affected the jury's verdict and did not sufficiently prejudice Petitioner's case to merit relief. *See id.*

Petitioner has not shown that the state court's decision was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. Even assuming that Johnson was deficient for failing to object to the introduction of irrelevant or inflammatory information, there is no evidence to suggest that this failure was prejudicial. That is, Petitioner has not established AEDPA-cognizable error in the state court's finding or conclusion that the failure of Johnson to raise this objection did not result in her conviction.

Testimony by Jessica Edwards

Petitioner contends that her attorney was ineffective for eliciting testimony from Jessica Edwards – who is the adoptive mother of Petitioner's son – that she believed that Petitioner was guilty. During cross-examination of Edwards, Johnson asked her when she started thinking that Petitioner was guilty. *See id.,* Vol. IV at 63-64. Petitioner claims that this constituted inadmissible opinion testimony regarding the ultimate issue in the case.

According to Johnson, he asked this question to establish that Edwards only came forward as a witness when she learned that Petitioner allegedly confessed to murdering K.V. and sought to discredit Edwards' testimony by establishing bias. *See* Habeas Tr. at 95-99. That is, counsel intended to establish that otherwise innocuous

statements by Petitioner only seemed inculpatory because Edwards was told that Petitioner had confessed to murder. The state habeas court found that "[t]rial counsel had a reasonable trial strategy in demonstrating to the jury the reason for Edwards's belated statement to the police: that she came forward only after hearing of Dodson's confession." Clerk's R. at 66. Although the habeas court found that Edwards's subjective opinion regarding Petitioner's guilty was not admissible, the court found that the testimony, "in all reasonable probability, did not affect the jury's determination of guilt." *Id.*

The *Strickland* standard is highly deferential to strategic choices made by trial counsel. "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Cotton v. Cockrell,* 343 F.3d 746, 752 (5th Cir. 2003) (internal quotation marks omitted). A conscious and informed decision on trial tactics cannot form the basis of an ineffective assistance of counsel claim "'unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Id.* at 753 (quoting *United States v. Jones,* 287 F.3d 325, 331 (5th Cir. 2002)).

Here, Johnson made the strategic decision to undercut Edwards's testimony by pointing out that she only contacted the police once she learned that Petitioner had confessed. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was either factually or legally unreasonable under the doubly-deferential standard applied to *Strickland* claims.

Information that Petitioner Was a Topless Dancer

Petitioner alleges that counsel was ineffective for failing to file a motion in limine regarding and object, if necessary, to prohibit testimony that Petitioner had worked as a topless dancer. At trial, the prosecutor asked Petitioner to "tell the ladies and gentlemen of the jury a little bit about the jobs that [she has] had." *See* Trial Tr. Vol. X at 75. In response, Petitioner stated that she "used to dance at a topless club," among other employment experience. *Id.* In her closing argument, the prosecutor suggested that Petitioner's prior employment as a topless dancer indicated that she was misleading the jury when she appeared meek and unsophisticated during her testimony. *See id.*, Vol. XI at 21-22. Defense counsel argued that this prior job suggests that Petitioner was susceptible to coercion by Sergeant Rich, which led to her false confession. *See id.* at 54.

The state habeas court found that defense counsel's strategy of using Petitioner's past in order to argue that she was susceptible to coercion was reasonable trial strategy. *See* Clerk's R. at 70-71. Although Petitioner claims that this evidence was admitted "because it was offered to show that she is immoral," *see* Dkt. No. 2 at 31, a review of the trial transcript belies that statement. Testimony regarding Petitioner's job as a topless dancer was volunteered in response to a broad question about her prior work experience. That information was relevant because Petitioner put into dispute whether she was coerced into a false confession partially due to her naivete.

The prosecutor did not urge the jury to convict her or doubt her veracity due to poor character but because she was more street savvy and experienced than her

testimony on direct would have suggested. This evidence is unlike that in *Cravens v. State*, 687 S.W.2d 748, 751-52 (Tex. Crim. App. 1985), where the prosecutor asked whether a defense witness worked as a "common prostitute" – testimony having no relevance other than to establish her bad character. Similarly, in *Ex parte Aguilar*, No. AP-75526, 2007 WL 3208751, at *6-*7 (Tex. Crim. App. Oct. 31, 2007), defense counsel was found ineffective for a myriad of reasons, including his failure to object to character evidence that the defendant was rude and cursed, had children out of wedlock by different men, worked as a topless dancer, killed her stepmother's rabbit, and associated with unsavory persons.

Petitioner has not pointed to any case law, and the undersigned is unaware of any, that holds that being a topless dancer is *per se* "bad acts" evidence. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was either factually or legally unreasonable as measured against the Section 2254(d) standards.

Expert Testimony

Petitioner also faults Johnson for failing to present expert medical testimony that the emergency room doctor that treated K.V. on March 24, 2005 should have ordered additional tests to rule out certain life-threatening diseases. Based on an affidavit prepared by Petitioner's counsel's brother, Petitioner contends that a medical expert could have established that Dr. Nicole Hernandez "violated the standard of care" in the weeks prior to K.V.'s death. That is, had Dr. Hernandez more fully investigated the causes of this earlier medical episode, she might have found a cause

which would provide reasonable doubt that K.V. later died as the result of Petitioner's criminal act. *See* Dkt. No. 2 at 33-38. The state habeas court denied this claim, finding that the decision not to introduce expert medical testimony or medical records was reasonable trial strategy made after consulting with experts and that the testimony would not have affected the jury's verdict. *See* Clerk's R. at 76-77.

With respect to the failure to call defense witnesses, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Here, there is no evidence that counsel's brother, or any other expert witness, was available to testify at trial, nor that the testimony would have been favorable.

Moreover, Petitioner must be able to show "a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning h[er] guilt." *Earhart v. Johnson,* 132 F.3d 1062, 1068 (5th Cir. 1998). Here, Petitioner does not claim that an expert would have testified that K.V. died as the result of seizure disorders, Long QT Syndrome, anemia, breathing problems, or any other known cause. Instead, Petitioner contends that an expert would opine that Dr.

Hernandez should have performed additional tests two weeks before K.V.'s death and that, having failed to perform these tests, alternative causes of death could not be ruled out.

Defense counsel repeatedly stressed during the trial that K.V.'s death could have resulted from any number of causes. It is too speculative to suggest that an unnamed witness would have provided sufficient testimony about Dr. Hernandez's competence in failing to rule out alternative causes of the earlier medical episode that the jury would have found reasonable doubt of Petitioner's guilt in her daughter's death. Accordingly, measured against the deferential standards of Section 2254(d), Petitioner has failed to establish that the state court's findings were unreasonable.

<u>Cumulative Error</u>

Petitioner faults the state habeas court and Respondent for addressing the prejudice stemming from each alleged deficiency individually, rather than cumulatively. *See* Dkt. No. 2 at 40 & Dkt. No. 11 at 3-4. Contrary to Petitioner's suggestion, *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010), does not stand for the proposition that a reviewing court must only consider prejudice stemming from counsel's alleged errors cumulatively. To the contrary, the *White* court individually addressed the deficiency and prejudice prongs of *Strickland* for each claim of ineffective assistance of counsel. *Id.* at 899-912. The United States Court of Appeals for the Fifth Circuit there addressed cumulative error in passing, indicating that, <u>even if</u> the inflammatory evidence of the murder victim's pregnancy by itself did not satisfy the prejudice prong, the "combined prejudicial effect" of the commentary on the defendant's

post-arrest silence and the death of the unborn child compelled the Court to find prejudice. *Id.* at 912.

It is well settled in the Fifth Circuit that cumulative error is an independent basis for federal habeas corpus relief where the individual errors involved matters of constitutional dimension that, taken together, "so infected the entire trial that the resulting conviction violates due process." *Westley v. Johnson,* 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992)). Neither meritless claims nor claims that are not prejudicial can be cumulated, regardless of the total number of such errors raised. *See Derden*, 978 F.2d at 1461.

Here, Petitioner has not shown that the alleged errors, as a whole, cast doubt upon the reasonableness of the state court's determination. As discussed above, none of the Petitioner's claims in the present case has merit, and she has not proven that the alleged errors caused her prejudice.

As such, Petitioner's allegation of cumulative error should be denied.

### Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 18, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE